UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

JEROME LAMAR MILLER,

            Plaintiff,

v.

CATHERINE BAUMAN et al.,

            Defendants.
_____/

Case No. 2:22-cv-71

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing suit in the United States District Court for the Eastern District of Michigan. On April 1, 2022, that court transferred the matter to this Court for further proceedings. (ECF No. 5.) Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 8.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. Plaintiff sues Warden Catherine Bauman, Correctional Officers Unknown Knox, Unknown Stevens, and Prison Counselor Unknown Darusha.

Plaintiff's complaint consists of the form used by the Eastern District of Michigan, a handwritten complaint, and exhibits. On the form, Plaintiff contends that officials at NCF abused their power by placing him in segregation "with no written notice of charges" and removing him from his job without due process. (*Id.*, PageID.4.) He alleges that Defendant Darusha deprived him of "mental medical assistance" and instead "set up a phony interview with a fake [psychiatrist], playing with [Plaintiff's] mental state." (*Id.*) When Defendant Bauman learned of the issue, she failed to investigate and instead "acted as if the problem would just go away." (*Id.*, PageID.5.) Moreover, Defendants Knox and Stevens "both showed express malice because they actually contemplated the injury and wrong they cause[d]." (*Id.*) Plaintiff indicates that these events occurred on May 10, 2020, January to December of 2021, and October 1, 2021. (*Id.*, PageID.6.)

Plaintiff goes on to allege that he was targeted by another inmate "who went and got [Defendant] Knox." (*Id.*, PageID.7.) He claims that Defendant Knox issued him a misconduct ticket based on what the inmate stated but "wrote the ticket as if she actuall[y] saw the incident happen, when nothing happen[ed]." (*Id.*) After Plaintiff complained about abuse of power and the conditions at NCF, someone gave his JPay password to "some gangbangers so they could witness what [Plaintiff] was saying to [his] friends and family concerning these same gangbangers." (*Id.*) Plaintiff claims that the gangbangers started threatening him and destroying his property. (*Id.*)

2

Every time Plaintiff changed his JPay password, the gangbangers "always seemed" to get the new one within days. (*Id.*) Plaintiff goes on to assert that Defendant Stevens retaliated against him by writing a false misconduct ticket. (*Id.*) Plaintiff was placed in administrative segregation and removed from his work assignment. (*Id.*)

The handwritten portion of Plaintiff's complaint consists primarily of Plaintiff's citations to case law and statutes and explanations thereof. He contends that he "is the center of corruption" at NCF and has been the "target of a[] hit that is the doing of one or more of [NCF] staff." (*Id.*, PageID.18.) Plaintiff alleges that on January 3, 2021, NCF staff members instigated other prisoners who are gang members "to cause mental, physical[,] and emotional harm" to him. (*Id.*) He "seeks to press charges" on Defendant Bauman for ignoring his wellbeing and ordering him "back to population w[h]ere the danger [existed]." (*Id.*, PageID.19.)

Plaintiff goes on to state that on May 10, 2020, Defendant Knox issued him a misconduct "stating that her attention was drawn to a loud commotion from down the hall." (*Id.*, PageID.22.) She indicated that she saw Plaintiff "yelling at another inmate while slamming his chair repeatedly onto the table in front of him." (*Id.*) Plaintiff contends that Defendant Knox did not personally see him doing this and based the misconduct ticket on what another inmate told her. (*Id.*)

Plaintiff also claims that on July 16, 2021, an NCF inspector (not a party) told Officer Handa (not a party) to give Plaintiff a direct order to go back to his unit after "locking him up for protection." (*Id.*) Plaintiff claims NCF staff chastised and threated him with more time in segregation instead of "doing an investigation to see w[h]ere the threat was." (*Id.*)

Plaintiff repeats his allegation that on January 1, 2021, NCF officials put a hit on him by providing his JPay password to gangbangers "so they can have access to letters [Plaintiff] wrote to family/friends with contents of [him] explaining the action that [NCF] takes when dealing with

3

the behavior of gangbangers." (*Id.*) Plaintiff changed his password several times, but the gangbangers always managed to get it. (*Id.*) He also tried locking his tablet in his locker, but gangbangers "started breaking [his] property." (*Id.*) On January 27, 2021, Plaintiff wrote to the Central Office because Prison Counselor Brown and Resident Unit Manager Zeller (not parties) did not respond to the "countless kites" he wrote about the issue. (*Id.*, PageID.24.)

Plaintiff claims that he became a victim to "abuse of power" again on October 1, 2021, when Defendant Stevens "employed his power and position on [Plaintiff] as an instrument of oppression." (*Id.*, PageID.25.) Plaintiff subsequently told Assistant Deputy Warden Hubble (not a party) about the conditions, and Hubble asked Plaintiff if he had spoken to mental health. (*Id.*) Plaintiff submitted a kite, and Defendant Darusha manipulated him by scheduling a "fake [psychology] interview so that [Plaintiff would not] be able to show why these conditions ha[d] such a major impact on [his] mental status." (*Id.*, PageID.25–26.) Plaintiff wrote letters to Defendant Bauman that "fell on deaf ears." (*Id.*, PageID.26.) Plaintiff also contends that in March of 2020, he told Hubble about the effects on his mental health, and that Hubble told him he would have to talk to the mental health department. (*Id.*, PageID.29.) Plaintiff states that the showers exposed half of his body and that the "person taking a shower next to [him could] look over the wall at [him]." (*Id.*) Plaintiff claims that he was constantly being watched by predators. (*Id.*)

Plaintiff's exhibits provide somewhat more explanation. On May 10, 2020, Defendant Knox issued a Class II misconduct to Plaintiff for destruction or misuse of property and excessive noise. (*Id.*, PageID.45.) She indicated that she saw Plaintiff yelling at another inmate "while slamming his chair repeatedly onto the table in front of him. The noise and arguing was heard clearly from the staff office and was loud enough to cause alarm." (*Id.*) Plaintiff was found guilty after a hearing and sanctioned to 10 days' loss of privileges (LOP). (*Id.*, PageID.46–47.)

4

On July 16, 2021, Officer Handa wrote a Class II misconduct charging Plaintiff with disobeying a direct order after Plaintiff refused to return to his housing unit. (*Id.*, PageID.48.) Plaintiff subsequently submitted a grievance asking how he could get a ticket if he was taken to segregation for protection. (*Id.*, PageID.49.)

On October 1, 2021, Defendant Stevens wrote a Class II misconduct charging Petitioner with theft/possession of property after watching Plaintiff attempt to smuggle a bag full of bread out of the chow hall. (*Id.*, PageID.56.) At his hearing, Plaintiff stated that he took the bread while working in the chow hall and was going "to feed it to the birds out of the trash exit of the chow hall." (*Id.*, PageID.57.) Plaintiff was found guilty and sanctioned to 3 days' toplock.[1] (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) a First Amendment retaliation claim; (2) failure to protect and provide adequate medical care under the Eighth Amendment; and (3) violations of the Fourteenth Amendment's Due Process Clause. As relief, Plaintiff requests that the misconduct tickets be dismissed "and to ride out of the facility." (*Id.*, PageID.8.) He also requests "to be compensated for the time [he] lost for not working and the mental stress that was cause[d] [due] to the abuse [he received]." (*Id.*)

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[1] "Toplock" is a restriction of the prisoner to his own cell, room, or bunk and bunk area. *See* MDOC Policy Directive 03.03.105 ¶ MMM–OOO (eff. July 1, 2018).

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against Defendant Bauman

Plaintiff contends that Defendant Bauman failed to investigate but instead "acted as if the problem would just go away." (ECF No. 1, PageID.5.) He claims that she failed to "provide an [environment] free of life threatening conditions." (*Id.*) Plaintiff avers that he wrote letters to

Defendant Bauman that "fell on deaf ears." (*Id.*, PageID.26.) It appears that Plaintiff has named Bauman as a Defendant because of her position as Warden of NCF.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts plausibly showing that Defendant Bauman encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. At most, Plaintiff avers that he sent numerous letters regarding his various issues to Defendant Bauman, to no avail. Plaintiff, however, cannot hold Defendant Bauman liable for simply failing to act in response to his letters. *See Shehee*, 199 F.3d at 300. Moreover, Plaintiff alleges no facts suggesting that Defendant Bauman even received the letters. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Bauman was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendant Bauman are premised entirely on respondeat superior liability, such claims will be dismissed.

### B. First Amendment Retaliation Claim

Plaintiff vaguely states that Defendant Stevens retaliated against him by issuing a false misconduct ticket. (ECF No. 1, PageID.7.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, while receipt of a misconduct ticket can be adverse action sufficient to support a retaliation claim, *see Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007), Plaintiff has alleged no facts regarding any protected activity that he engaged in prior to Defendant Stevens issuing the misconduct ticket. Plaintiff merely alleges the ultimate fact of retaliation in this action. Accordingly, he fails to state a plausible First Amendment retaliation claim against Defendant Stevens. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### C. Eighth Amendment Claims

#### 1. Failure to Protect

Throughout his complaint, Plaintiff suggests that staff at NCF put a hit out on him by providing his various JPay passwords to "gangbangers" so that they could read what Plaintiff wrote about them in his letters to family and friends. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other

prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Nothing in Plaintiff's complaint, however, allows the Court to infer that the named Defendants were the individuals responsible for providing Plaintiff's JPay password to the "gangbangers." Plaintiff's vague reference to "staff" "does not support a reasonable inference that each Defendant is liable for [a constitutional violation]." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Nothing in the complaint suggests that the named Defendants were aware of any excessive risk to Plaintiff's safety posed by the "gangbangers" and ignored that risk. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. Plaintiff's Eighth Amendment failure to protect claims will, therefore, be dismissed.

### 2. Denial of Mental Health Treatment

Plaintiff alleges that Defendant Darusha deprived him of "mental medical assistance" and instead "set up a phony interview with a fake [psychiatrist], playing with [Plaintiff's] mental state." (ECF No. 1, PageID.4.) Plaintiff told Assistant Deputy Warden Hubble (not a party) about the conditions he was experiencing, and Hubble asked Plaintiff if he had spoken to mental health. (*Id.*) Plaintiff submitted a kite, and Defendant Darusha manipulated him by scheduling a "fake [psychology] interview so that [Plaintiff would not] be able to show why these conditions ha[d]

11

such a major impact on [his] mental status." (*Id.*, PageID.25–26.) The Court construes Plaintiff's claim against Defendant Darusha to be an Eighth Amendment claim premised upon the denial of mental health treatment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

12

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's vague allegations are insufficient for the Court to infer that Defendant Darusha was deliberately indifferent to his need for mental health treatment. Plaintiff provides no facts to support his assertion that Defendant Darusha set up an appointment for Plaintiff with a "fake" psychiatrist. Plaintiff's vague assertion that Defendant Darusha "played with" his mental state does not support his conclusion; merely stating the "magic words" is not enough. *See Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Put simply, Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Darusha.

### D. Fourteenth Amendment Due Process Claims

Plaintiff suggests that Defendants Stevens and Knox violated his Fourteenth Amendment due process rights by issuing him false misconducts.[2] He avers that because of the misconducts,

---

[2] To the extent Plaintiff contends that Defendants Knox and Stevens violated his Eighth Amendment rights by issuing allegedly false misconducts, the filing of an allegedly false

13

he was placed in administrative segregation and lost his job placement.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As noted above, Defendant Knox issued a Class II misconduct to Plaintiff for destruction or misuse of property and excessive noise. (ECF No. 1, PageID.45.) Defendant Stevens wrote a

---

misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001).

14

Class II misconduct charging Petitioner with theft/possession of property after watching Plaintiff attempt to smuggle a bag full of bread out of the chow hall. (*Id.*, PageID.56.) Class II misconducts are minor misconducts for which Plaintiff could not have been denied good time or disciplinary credits. *See* MDOC Policy Directive 03.03.105 ¶¶ B, AAAA (eff. July 1, 2018). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff also cannot allege that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 486–87. For the misconduct issued by Defendant Knox, Plaintiff was sanctioned to 10 days' LOP. (ECF No. 1, PageID.46–47.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. July 1, 2018). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or

15

jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services).

For the misconduct issued by Defendant Stevens, Plaintiff was sanctioned to 3 days' toplock. (ECF No. 1, PageID.57.) A few days on toplock, however, does not amount to an atypical or significant hardship. *See Graham v. Chicowski*, No. 18-2049, 2019 WL 4381841 (6th Cir. May 3, 2019); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Percival v. Stuhler*, No. 16-0083, 2016 WL 4536330, at *5 (W.D. Mich. Aug. 31, 2016). Plaintiff also suggests he lost his job placement. (ECF No. 1, PageID.4.) Plaintiff, however, has no liberty or property interest in prison employment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989) (discussing that there is no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). ("[N]o prisoner has a constitutional right to a particular job or to any job.").

Likewise, Plaintiff's placement in segregation does not constitute an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead,

16

generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

For the foregoing reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants Stevens and Knox.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: __May 13, 2022__   /s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE